JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| IN RE: CONSOLIDATED FREIGHTWAYS CORP. ET AL. | CASE NO. EDCV-16-164-MWF |
|---|---|
| | OPINION AFFIRMING THE BANKRUPTCY COURT'S 2016 ORDER |

Before the Court is a bankruptcy appeal from the United States Bankruptcy Court (the Honorable Wayne Johnson, United States Bankruptcy Judge) (the "Bankruptcy Court").  Appellants Crown Enterprises and Hayward Property, LLC appeal from the Bankruptcy Court's January 2016 Order Denying Motion to Reopen Case for the Limited Purpose of Correcting Sale Order and Defective Deed (the "2016 Order").  (Excerpts of Record ("ER") Ex. A (Docket No. 10-3)).

On April 27, 2016, Appellants filed their Opening Brief.  (Docket No. 10). No Appellee has appeared in this case, although XPO Logistics Freight, Inc. has appeared as an Interested Party.  On June 24, 2016, XPO filed an Objection to Bankruptcy Appeal or Alternatively Request for Continuance ("Request").  (Docket No. 17).

The Court has reviewed the papers filed in this appeal and held a hearing on **June 27, 2016**.  Counsel for Appellants as well as XPO appeared at the hearing.

1

For the reasons stated below, the Court **AFFIRMS** the 2016 Order.  The Bankruptcy Court did not abuse its discretion by refusing to reopen the bankruptcy proceeding.  The Bankruptcy Court applied the correct law, and its application of the law to the facts of the case was neither illogical, implausible, nor unsupported by facts in the record.

Because the Court affirms the Bankruptcy Court's decision, the Court **DENIES** *as moot* XPO's Request to continue the oral argument.

## I. BACKGROUND

In 2002, Consolidated Freightways filed for bankruptcy protection.  (ER Ex. E at 333 (Docket No. 10-7)).  In the bankruptcy sale, Appellants purchased the real property located at 2256 Claremont Ct., Hayward, CA 94545 (the "Hayward Property").  (*Id.* at 340, 356).  In the Bankruptcy Court's order authorizing the sale ("Sale Order"), the Bankruptcy Court retained jurisdiction to "resolve any disputes, controversies or claims arising out of or relating to the Agreement."  (*Id.* at 361).

Somehow, when the Quitclaim Deed was recorded, the Quitclaim Deed reflected a different property in Emeryville, rather than Hayward, California.  (ER Ex. C at 137 (Docket No. 10-5)).  In addition, according to Appellants, the metes and bounds description in the purchase agreement memorializing the sale, which was attached as Exhibit A to the Sale Order, failed to "fully" describe the Hayward Property.  (*Id.* at 131).

Appellants did not discover these defects until approximately September 2015, when a prospective purchaser expressed interest in the Hayward Property.  (*Id.* at 132).  Appellants attempted to remedy this issue by contacting counsel for the Trust, but counsel for the Trust indicated that the Trust was dissolved in 2012.  (ER Ex. D at 227 (Docket No. 10-6) ("We no longer have a client that we can discuss this with, as there is no longer any Trust in existence and the Trustee's authority and services terminated in late 2012.")).

2

1    In December 2015, Appellants filed a Motion to Reopen Case for the Limited

2 Purpose of Correcting Sale Order and Defective Deed (the "Motion") with the

3 Bankruptcy Court.  (*See generally* ER Ex. B (Docket No. 10-4)).  Notice of the

4 Motion was served by email to 104 recipients who had participated in the

5 bankruptcy proceeding, and no oppositions to the Motion were filed.  (ER Ex. H at

6 411 (Docket No. 10-10); ER Ex. I at 420-25 (Docket Nos. 10-11)).  The Bankruptcy

7 Court held a hearing on January 12, 2016, and denied the Motion.  (ER Ex. F at 399

8 (Docket No. 10-8)).  Appellants then filed a timely Notice of Appeal to this Court

9 on January 22, 2016.  (*Id.* at 389).

10    On June 17, 2016, Appellants filed a supplemental brief notifying the Court

11 that XPO Logistics Freight, Inc. has come forward and "asserted that it, and not

12 Appellants, owns one of the parcels of [Hayward] [P]roperty."  (Notice of

13 Disclosure of Newly-Discovered Claims Relevant to Appeal ¶ 4 (Docket No. 15)).

14 Appellants dispute XPO's claim and contend that XPO owns only a neighboring

15 property to the Hayward Property.  (*Id.*).

16 **II.    <u>DISCUSSION</u>**

17    Denial of a motion to reopen a bankruptcy case is reviewed for an abuse of

18 discretion.  *Lopez v. Specialty Res. Corp. (In re Lopez)*, 283 B.R. 22, 26 (B.A.P. 9th

19 Cir. 2002).  To determine whether the Bankruptcy Court abused its discretion, the

20 Court conducts a two-step inquiry: (1) the Court reviews *de novo* whether the

21 Bankruptcy Court "identified the correct legal rule to apply to the relief requested";

22 and (2) if it did, the Court considers whether the Bankruptcy Court's application of

23 the legal standard was illogical, implausible, or "without support in inferences that

24 may be drawn from the facts in the record."  *United States v. Hinkson*, 585 F.3d

25 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc).

26    "Application to have the estate reopened may be made by an 'interested

27 party' who would be benefitted by the reopening."  *In re Welch*, No. BK 11-18277-

28 LBR, 2015 WL 65307, at *4 (B.A.P. 9th Cir. Jan. 5, 2015) (citation omitted).  The

3

Bankruptcy Court's decision to reopen or not is discretionary and governed by 11 U.S.C. § 350.  *Id.*  In exercising this discretion, the Bankruptcy Court may consider numerous factors, including (1) the benefit to creditors, (2) the benefit to debtor, (3) the prejudice to affected parties, (4) the availability of relief in other forums, (5) whether the estate has been fully administered, (6) the length of time between the closing of the case and the motion to reopen, and (7) good faith.  *See In re Arana*, 456 B.R. 161, 172-73 (Bankr. E.D.N.Y. 2011); *accord In re Welch*, 2015 WL 65307, at *4 ("[A] bankruptcy court may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed; whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims.  Bankruptcy Courts can also consider whether any parties would be prejudiced were the case reopened or not." (citations omitted)).

Here, the Bankruptcy Court found that the first six factors weighed against reopening the case and denied the Motion.  (ER Ex. G at 401 (Docket No. 10-9)).  The Bankruptcy Court conveyed its uncertainty as to how to weigh the last factor (good faith) under the circumstances.  (*Id.* at 402 ("Element of good faith, I'm not sure how to weigh that factor under these circumstances.  [It has] been 14 years since this passed.")).

Appellants contend that the Bankruptcy Court abused its discretion in analyzing the third (prejudice to affected parties), fourth (availability of relief in other forums), and sixth (length of time between the closing of the case and the motion to reopen) factors.  (Appellants' Opening Brief at 3–4).  Appellants do not contest the Bankruptcy Court's analysis regarding the other factors.

### A.    Third Factor:  Prejudice to Affected Parties

#### 1.    Prejudice to Appellants

The Bankruptcy Court did not err in concluding that Appellants had not proven they would suffer any prejudice because (1) the Sale Order indicated that the

1  purchase was covered by title insurance, and (2) an alternate remedy was available

2  in state court through a quiet title action.  (ER Ex. G at 3-4).

3      *First*, Appellants do not contest the Bankruptcy Court's conclusion that

4  Appellants would be indemnified by the title insurance company referenced in the

5  purchase agreement.  Therefore, even setting aside the availability of a quiet title

6  action, Appellants' claims of "severe prejudice" are overstated.

7      *Second*, as the Court discusses below, the Court agrees with the Bankruptcy

8  Court that an alternative remedy is available in Superior Court, and Appellants will

9  therefore not suffer any undue prejudice.

10  ## 2.    Prejudice to Other Parties

11      Appellants contend that the Bankruptcy Court abused its discretion in finding

12  prejudice to other parties given the absence of any opposing parties to the Motion or

13  any affected parties aside from Appellants.  (Opening Brief at 11).

14      It is true that no parties opposed Appellant's Motion in the underlying

15  bankruptcy proceeding.  However, to the extent that Appellants fault the Bankruptcy

16  Court for considering prejudice to any "hypothetical" affected parties, this argument

17  is without merit.  The Bankruptcy Court was free to "consider whether *any parties*

18  would be prejudiced were the case reopened or not."  *In re Welch*, 2015 WL 65307,

19  at *4 (emphasis added).  Furthermore, the Bankruptcy Court's concern with

20  prejudice to "other affected parties" is far from hypothetical.  XPO's recent

21  appearance and challenge to Appellants' interest in the Hayward Property

22  demonstrate that the Bankruptcy Court's concern was indeed well-founded.

23  Although counsel for Appellants argued at the hearing that XPO's claim in the

24  Hayward Property is legally defective, these are arguments that are properly heard

25  before the Superior Court in a quiet title action.

26      Therefore, applying the two-step test, the Court concludes that the

27  Bankruptcy Court applied the correct legal rule and did not abuse its discretion in

28  considering the prejudice to other affected parties.  Furthermore, the multi-factor

test required the Bankruptcy Court to balance all seven factors when deciding whether to reopen the case.  Even if the Court were to disregard the prejudice to other affected parties, the Court would still affirm the Bankruptcy Court's denial of the Motion on the grounds that the availability of a remedy in an alternate forum outweighs any prejudice to Appellants.

### B.   Fourth Factor: Availability of Relief in Other Forums

Appellants contend that the Bankruptcy Court abused its discretion in concluding that alternative relief is available in Superior Court because (1) the Bankruptcy Court's decision in the Sale Order to retain jurisdiction denied any other court concurrent jurisdiction; and (2) under governing California law, Appellants are precluded, as a matter of law, from the relief sought.  (Opening Brief at 13, 16–17).

### 1.   State Court Jurisdiction

Although it is true that state courts do not have jurisdiction to alter bankruptcy court orders, *see In re McGhan*, 288 F.3d 1172, 1179 (9th Cir. 2002), the Court disagrees with the premise of Appellants' argument that a quiet title action in Superior Court would require a modification of the Sale Order.

As the Bankruptcy Court noted, the relief Appellants seek is a modification of (1) the purchase agreement, which has no legal effect as an attachment to the Sale Order; and (2) the recorded title.  (ER Ex. G at 3).  Even the case on which Appellants rely explicitly held that state courts retain concurrent jurisdiction under 11 U.S.C. § 1334(b) to take any action other than modifying the Sale Order and to take any action involving property after it is no longer property of the bankruptcy estate.  *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 835-36 (B.A.P. 8th Cir. 2010).

The Court therefore concludes that the Bankruptcy Court did not apply an incorrect rule of law when determining that state courts had jurisdiction to hear a quiet title action pertaining to property purchased at the bankruptcy sale.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.   Other Obstacles

Appellants further argue that the Bankruptcy Court abused its discretion in concluding that a quiet title action in Superior Court constituted an adequate alternative to reopening the bankruptcy proceeding.  (Opening Brief at 16–17).

As a threshold matter, Appellants' arguments regarding the adequacy of relief through a quiet title action appear to be waived.  These arguments were neither raised in the Motion nor presented at the hearing.  (*See generally* ER Exs. B, G).  Furthermore, the Court questions whether Appellants' arguments regarding the ***merits*** of the quiet title action are even proper for this Court or the Bankruptcy Court to consider.  In examining the availability of alternative relief, the Court doubts that 11 U.S.C. § 350 would require the Bankruptcy Court to apply California state law and consider Appellant's likelihood of success on a potential quiet title action.  But even if the Court were to reach Appellants' claims of other obstacles standing in the way of relief through a quiet title action, Appellants' arguments still fail.

Appellants first claim that because the Debtor and Trust no longer legally exist, there is "no legal person on whom to serve the summons and complaint in a quiet title action."  (*Id.* at 16).  But even if the adverse parties are unknown or even non-existent, Appellants could bring a quiet title action because California procedural rules allow plaintiffs to plead against and serve by publication pseudonymous adverse parties if the adverse parties are unknown.  Cal Code Civ. Proc. §§ 762.020, 763.010; *see also S. Shore Land Co. v. Petersen*, 226 Cal. App. 2d 725, 731, 38 Cal. Rptr. 392 (1964) (example of a plaintiff filing a complaint to quiet title against "five doe defendants and [] all unknown claimants").  Furthermore, if Appellants remain concerned about their ability to sufficiently plead a quiet title action, XPO has felicitously come forward and supplied Appellants with an adverse party to name in a quiet title action.

1  Appellants also claim that California law precludes an equitable title holder

2  from maintaining a quiet title action against a legal title holder.  (Opening Brief at

3  16–17).  Under California law, however, only the legal title holder has standing to

4  assert this argument.  *Montgomery v. Nat'l City Mortg.*, No. C-12-1359 EMC, 2012

5  WL 1965601, at *12 (N.D. Cal. May 31, 2012) (holding that the loan servicer rather

6  than the owner of legal title does not have standing to assert this argument).

7  According to Appellants, only dissolved entities hold legal title; therefore, in effect,

8  no entity would be able to assert this argument against Appellants.

9  To the extent that Appellants argue that Superior Court would be a less

10  convenient forum to pursue a remedy, a "perceived convenience" of reopening the

11  case as compared to an alternative remedy is not a sufficient reason to reopen this

12  case.  *In re OORC Leasing, LLC*, 359 B.R. 227, 233 (N.D. Ind. 2007) (denying

13  creditor's request to reopen the bankruptcy case when other non-bankruptcy courts

14  of appropriate jurisdiction are available even if "the bankruptcy court would be a

15  more convenient forum").

16  Therefore, applying the two-step test, the Court concludes that the

17  Bankruptcy Court did not abuse its discretion.  The Bankruptcy Court correctly

18  applied the law when holding that a quiet title action in Superior Court was available

19  to Appellants.  Furthermore, the Bankruptcy Court drew logical inferences from the

20  facts in the record when holding that a quiet title action was available to Appellants.

21  **C.      Sixth Factor:  Intervening Lapse of Time**

22  Appellants' final contention is that the Bankruptcy Court abused its discretion

23  in finding that the passage of 14 years weighed against reopening the case.

24  Appellants contend that the passage of time can only weigh against reopening a case

25  insomuch as it causes prejudice.

26  ***First***, this argument does not address the fact that the Bankruptcy Court did

27  consider and find that reopening would be prejudicial to other affected parties who

28  may have an interest adverse to Appellants in the Hayward Property.  (ER Ex. E at 5

8

1   ("[T]he affected parties are entitled to the procedural protections that come from a

2   quiet title action.").

3          ***Second***, this area of law is not as conclusively settled as Appellants suggest.

4   Appellants cite to Second Circuit case law for support, but other Circuits have held

5   that the mere passage of time does weigh against reopening and requires a greater

6   showing of cause to support reopening.  *See, e.g.*, *Redmond v. Fifth Third Bank*, 624

7   F.3d 793, 799 (7th Cir. 2010) ("The passage of time weighs heavily against

8   reopening.  The longer a party waits to file a motion to reopen a closed bankruptcy

9   case, the more compelling the reason to reopen must be."); *In re Case*, 937 F.2d

10  1014, 1018 (8th Cir. 2005) ("The longer the time between the closing of the estate

11  and the motion to reopen, however, the more compelling the reason for reopening

12  the estate should be."); *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962) ("Re-

13  opening removes the element of certainty from the adjudication and settlement of

14  the estates.  It is as essential to the creditors as it is desirable to the bankrupt that this

15  element of certainty be destroyed only for the most compelling cause.  Accordingly

16  as the time between closing of the estate and its re-opening increases, so must also

17  the cause for re-opening increase in weight.").  Therefore, even if the Bankruptcy

18  Court did not consider prejudice to other affected parties, the Court would not be

19  able to conclude that the Bankruptcy Court applied the incorrect legal rule in the

20  absence of governing Ninth Circuit case law.

21         **D.      Balancing the Equities**

22         On balance, especially in view of the alternative remedy available in Superior

23  Court, the equities weigh against Appellants' request to reopen the bankruptcy

24  proceeding.  *Cf. In re Fuller*, 146 B.R. 633, 639 (Bankr. S.D.N.Y. 1992) ("It is

25  questionable whether a desire to clear title is a sufficient ground to reopen a

26  bankruptcy case" when "an alternative remedy in the state" is available . . . .

27  "[T]here appears to be little justification for invoking this court's jurisdiction to

28  resolve [a] clouded title problem.").

9

The Court's conclusion is further reinforced by the Ninth Circuit's decision in *Hull v. Powell*, 309 F.2d 3, 4 (9th Cir. 1962), which also arose from a petition to reopen a bankruptcy case to clear title. In *Hull*, a bankruptcy estate was closed without administration in 1935. *Id.* The estate was reopened in 1958 for the purpose of clearing title in real property the petitioner had purchased when the State of California sold some of the debtor's property for nonpayment of taxes. *Id.* The petitioner argued that the closing of the estate without administration left a cloud on his title. *Id.*

On appeal, the Ninth Circuit observed that, in other circuits, "[i]t has been held improper to reopen an estate for the purpose of clarifying the title of the bankrupt or his vendee, or even the title of a vendee of the trustee." *Id.* (citing *Saper v. Viviani*, 226 F.2d 608 (2d Cir. 1955); *In re Ostermayer*, 74 F.Supp. 803 (D.N.J. 1947)). Furthermore, the Ninth Circuit found that "[t]he petitioner's delay in seeking relief was inordinate." *Id.* at 6. For 23 years, petitioner and his predecessors in title had "record notice of the existence of the problem [that] is now advanced as cause for reopening but took no action." *Id.* (emphasis added). "Moreover, it appears that petitioner and his predecessors in title may have had an alternative remedy in the courts of the State [that] they made no effort to pursue." *Id.* After considering other factors, including opposition to further administration from a person who claimed intervening rights in the property, the Ninth Circuit held that the petitioner's request "that the estate be reopened 'for the purpose of clearing the title'" should have been denied. *Id.* at 6–7.

Many analogies can be drawn between *Hull* and the facts here. The most salient similarities include (1) the availability of alternative relief in Superior Court to quiet title; (2) the lengthy delay between seeking reopening and the time that the moving party had ***record notice*** of its clouded title; and (3) the prejudice to other parties who have now claimed an adverse interest in the property at issue.

At the hearing, counsel for Appellants emphasized that Appellants were bona fide purchasers who paid the purchase price and have continued to pay property taxes for the Hayward Property.  Although the Court is sympathetic to the position in which Appellants find themselves, assuming all their allegations are true, whether the party seeking reopening was a bona fide purchaser did not seem to sway the Ninth Circuit's holding in *Hull* that the petitioner's request was inappropriate in light of the relevant factors.  For these reasons, the *Hull* decision provides further support for this Court's decision to affirm.

**III.   <u>CONCLUSION</u>**

Accordingly, the Court **AFFIRMS** the decision of the Bankruptcy Court.

IT IS SO ORDERED.

DATED: June 28, 2016

_____
MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court